UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Shane Walsh,
    Claimant

    v.                                    Case No. 11-cv-108-SM
                                               Opinion No. 2012 DNH 034
Michael J. Astrue, Commissioner,
Social Security Administration,
    Respondent


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Claimant, Shane Walsh, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Commissioner objects and moves for an order affirming his decision.


**Factual Background**

I.    Procedural History

On December 9, 2008, claimant filed an application for social security disability insurance benefits ("DIB benefits"), alleging that he had been unable to work because of disability due to depression, anxiety, bipolar disorder, and problems with sleep.  His application for benefits was denied and he requested an administrative hearing before an Administrative Law Judge ("ALJ").

On September 10, 2010, claimant (who was then 28 years old), his attorney, and an impartial vocational expert appeared before an ALJ.  On October 20, 2010, the ALJ issued his written decision, concluding that claimant was not disabled from March 31, 2008, through the date of the ALJ's decision and that claimant is capable of performing past relevant work as a prep cook and file clerk.  In the alternative, the ALJ found that claimant could perform other work existing in significant numbers in the national economy, such as janitor and groundskeeper.

The Decision Review Board ("DRB") selected the ALJ's decision for review.  The DRB found that the ALJ's determination that claimant was not disabled was supported by substantial evidence.

Claimant filed a timely action in this court, appealing the denial of DIB benefits.  Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" (document no. 9) and the Commissioner's "Motion for Order Affirming the Decision of the Commissioner" (document no. 12).

II.  <u>Stipulated Facts</u>

Pursuant to Local Rule 9.1(d), the parties submitted a Joint Statement of Material Facts which, because it is part of the

court record (document no. 13), need not be recounted in this opinion.

**Standard of Review**

I. Properly Supported Findings by the ALJ are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1] See 42 U.S.C. §§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

as it is supported by substantial evidence."). See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, claimant must prove that his impairment prevents him from performing his former type of work. <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." <u>See</u> <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1,

2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g). If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant. See Hisnandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

    (1)   whether claimant is engaged in substantial gainful activity;

    (2)   whether claimant has a severe impairment;

    (3)   whether the impairment meets or equals a listed impairment;

    (4)   whether the impairment prevents claimant from performing past relevant work; and

    (5)   whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

>    physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.


**Discussion**

I.   Background - The Commissioner's Findings

The ALJ concluded that claimant was not disabled from March 31, 2008, through October 20, 2010.  In reaching his decision, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  He first determined that claimant had been engaged in substantial gainful employment since March 31, 2008, his alleged onset date.  Next, he concluded that claimant has the severe impairments of alcohol dependency disorder, a history of cannabis abuse, and an anxiety

disorder.  Administrative Record ("Admin. Rec.") 17-18. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Id.

Next, the ALJ concluded that claimant retained the residual functional capacity to perform the full range of work at all exertional levels, but he was limited to two- to three-step routine tasks, but could sustain attention, concentration, and pace for routine tasks over the course of a normal workday and workweek.  The ALJ further found that claimant could engage in "brief, superficial interactions with the general public . . . participate in typical interactions with coworkers and supervisors while completing routine tasks of a nonsocial nature . . . maintain adequate personal grooming and hygiene . . . adapt to minor changes in routine . . . [engage in] independent goal directed behavior while completing routine tasks . . . [be] aware of typical hazards . . . [and] travel independently."  Id. at 19-20.

Based on his assessed residual functional capacity, the ALJ found claimant could perform his past work as a prep cook and file clerk.  Consequently, the ALJ concluded that claimant was

not "disabled," as that term is defined in the Act.  Id. at 26.
Claimant, therefore, was deemed ineligible for DIB benefits.

The DRB reviewed the ALJ's determination.  It found that claimant's severe impairments were not limited to those found by the ALJ, but also included a bipolar disorder and post-traumatic stress disorder ("PTSD").  Notwithstanding the ALJ's "Step Two" error, however, the DRB held that the ALJ's determination that claimant was not disabled was supported by substantial evidence. The DRB's decision affirming the ALJ became the final decision of the Commissioner.  See Summers v. Astrue, Civ. No. 10-11792-DJC, 2011 WL 5508919, at *1 (D. Mass. Nov. 10, 2011) (ALJ's decision, as "reviewed and supplemented by the Decision Review Board," is the final decision of the Commissioner subject to judicial review).

II.  The Commissioner Failed to Address An Underlying
     Evidentiary Issue

Claimant first argues that the Commissioner failed to assess the evidence in light of the features of bipolar disorder.  The Commissioner responds that claimant is simply asking this court to reweigh the evidence.

The Commissioner correctly points out that it is his "province," not this court's, "to resolve conflicts in the

evidence." Shulkin v. Astrue, Civil No. 10-cv-451-PB, 2012 WL 79007, at *9 (D.N.H. Jan. 11, 2012). However, "he has not adequately fulfilled that function where he 'adopt[s] one view of the evidence, without addressing the underlying conflict.'" Id. (quoting Dube v. Astrue, 781 F. Supp. 2d 27, 35 (D.N.H. 2011)). In most cases involving mental illness, "[t]he essential question" as to which there is an evidentiary conflict is "whether [claimant], despite an ability to function at some level, was rendered unable by his mental illness to function at a high enough level to maintain full-time employment." Id. at *11. Here, the mental illness at issue (or one of them) is bipolar disorder. The particular features of that disease should guide an evaluation of evidence that shows (or does not show) the limiting effects of a claimant's bipolar symptoms on his or her ability to maintain full-time employment.

One feature - perhaps the hallmark - of bipolar disorder is that it is "episodic." Kangail v. Barnhart, 454 F.3d 627, 628 (7th Cir. 2006) (Posner, J.).[2] "The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so that any single notation [by a provider]

---

[2] In his brief, the Commissioner seemingly misunderstands the fundamental nature of bipolar disorder, stating "Plaintiff has pointed to no evidence substantiating the cyclic nature of his bipolar disorder." Document No. 12-1, at 12.

10

that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011). Accordingly, where the claimant has a severe impairment of bipolar disorder, the ALJ must not simply "cherry-pick […]" the files of treating physicians to find evidence of good results among evidence of symptoms. Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011). See also Scott, 647 F.3d at 739-40 (where claimant had bipolar disorder, ALJ was not permitted to rely only on treating psychiatrist's assessment that claimant "had responded well to treatment," where psychiatrist also stated that claimant was likely to miss work because of the disorder). Likewise, a treating source opinion that a claimant with bipolar disorder is "stable" must be viewed in context. See Halik v. Astrue, No. 2:09-CV-379-PRC, 2010 WL 3927494, at *16 (N.D. Ind. Sept. 30, 2010). An observation, for instance, that claimant is "stabl[e] in the office" is not the same as an "observation[...] of 'stability' . . . as to Plaintiff's ongoing bipolar disorder." Id.

Other features of bipolar disorder that should be taken into account in a disability determination are the difficulty of treating it and the fact that substance abuse and noncompliance with treatment may be symptoms of the disease - and not

presumptive proof that the claimant's disorder is not disabling. Kangail, 454 F.3d at 629-31.

In Kangil, Judge Posner addressed all of these features of bipolar disorder and found the ALJ had failed to assess the evidence in light of them:

> [The ALJ] thought the medical witnesses had contradicted themselves when they said the plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits. There was no contradiction; bipolar disorder is episodic. The judge went so far as to attribute bipolar disorder to substance abuse, although the medical literature, while noting a positive correlation between the two conditions and speculating that alcohol may trigger bipolar symptoms, does not indicate that the disorder itself can be so caused. [citations omitted]
>
> What is clear is the reverse - that bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms. [citations omitted]. There was medical testimony that the plaintiff has "a tendency to indiscriminately use drugs and alcohol" during her manic phases, which are frequent - about monthly. But the fact that substance abuse aggravated her mental illness does not prove that the mental illness itself is not disabling. Brown v. Apfel, 192 F.3d 492, 499 (5th Cir.1999); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).

> \* \* \*

> [M]ental illness in general and bipolar disorder in particular (in part because it may require a complex drug regimen to deal with both the manic and the depressive phases of the disease [citations omitted]), may prevent the sufferer from taking her prescribed

>     medicines or otherwise submitting to treatment.
>     [citations omitted].  The administrative law judge did
>     not consider this possibility.

Id. at 629-631.

Here, the Commissioner found the treating provider opinions and claimant's own complaints about the severity of his bipolar symptoms not credible, in significant part because, although he had bad days, claimant also had good days;[3] claimant's lower GAF scores occurred "in the context of episodic exacerbation of symptoms," Admin. Rec. 3; some emergency hospitalizations and other episodes of "abnormal mood and affect" were preceded by drug or alcohol abuse, id. at 2-3; claimant was not, at times, compliant with treatment; and symptoms flared during changes in medication.  The Commissioner may be right that these facts could suggest that claimant is not disabled.  But to reliably reach that conclusion, the Commissioner must first have "consider[ed] th[e] possibility," Kangil, 454 F.3d at 631, that these facts

---

[3] Some of the "good" moods were cited by the ALJ, seemingly, without an appreciation for their context.  For example, the ALJ relied on the fact that on January 14, 2009, claimant reported that his mood was "stable."  But the ALJ did not mention that claimant made the statement while he was in the hospital's emergency room, where he was being seen for suicidal ideation.  And he made the statement "several hours" after he had been administered anti-anxiety medication by the ER staff.  The stability of claimant's mood on that day appears, therefore, to relate to his status "in the office," and not "as to [his] ongoing bipolar disorder."  Halik, 2010 WL 3927494, at *16.

may, instead, be consistent with a bipolar disorder of disabling symptomatology.  There is nothing in the ALJ[4] or DRB decisions that would suggest that the Commissioner did that.

Accordingly, as in <u>Shulkin</u>, the court finds that the Commissioner "adopt[ed] one view of the evidence, without addressing the underlying conflict."  <u>Shulkin</u>, 2012 WL 79007, at *9 (quotation omitted).  Meaningful review by this court of the Commissioner's final decision is, therefore, not possible.  The case is remanded so that the Commissioner can address the underlying evidentiary conflict in the first instance.  <u>See</u> <u>id</u>. at *11 (remanding for further proceedings where ALJ failed to address underlying evidentiary conflict).

III. <u>Claimant's Remaining Objections</u>

Claimant's additional arguments for reversal are not addressed in light of the remand.  Nevertheless, it may be worthwhile to point out a troublesome aspect of the

---

[4] At Step Two, a rather low threshold, the ALJ failed to recognize that claimant suffered from the serious impairment of bipolar disorder.  He did not, therefore, consider how these facts might support the treating providers' opinions and claimant's complaints about the severity of his bipolar symptoms.  The ALJ's error at Step Two may have made the DRB's review unnecessarily difficult and may have increased the risk of an erroneous determination.  Caution by the ALJ at Step Two, therefore, may be the prudent approach.

Commissioner's decision "so that the SSA does not repeat [it] on remand." Scott, 647 F. 3d at 741.

In assessing claimant's residual functional capacity, the ALJ was required to consider all relevant evidence in the record, including lay evidence. Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5 (July 2, 1996). Claimant's wife, Sarah Walsh, reported that claimant suffered from functional limitations consistent with the observations of claimant's treating sources. Neither the ALJ nor the DRB discussed Ms. Walsh's statements, which is of course error. Fedele v. Astrue, Civil No. 08-cv-520-JD, 2009 WL 1797987, at * 5 (D.N.H. June 23, 2009) (failure to "give reasons for disregarding [spouse's] testimony . . . is error."). Given the Commissioner's failure, as discussed, to resolve an underlying evidentiary conflict, the court cannot say that failing to discuss Ms. Walsh's statements is harmless. See Phelps v. Astrue, No. 10-cv-240-SM, 2011 WL 2669637, at *8 (D.N.H. July 7, 2011) (failure to discuss testimony of claimant's husband was harmless error because record otherwise supported ALJ's determination).

**Conclusion**

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is granted and the Commissioner's motion to affirm his decision (document no. 12) is denied.  The case is remanded for further proceedings in accordance with this order.  Because this remand is made pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of Court is instructed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 20, 2012

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.